IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | |
|---|---|
| CONTINENTAL AIRLINES, INC., ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 1:05cv96 |
| ) | |
| CONTINENTALAIRLINES.COM and ) | |
| CONTINENTALEXPRESSAIRLINES.COM, ) | |
| ) | |
| Defendants. ) | |

## ORDER

In February 2005, plaintiff Continental Airlines, Inc. brought this *in rem* action against the Internet domain names <continentalairlines.com> and <continentalexpressairlines.com> pursuant to the Anti-Cybersquatting Consumer Protection Act ("ACPA"), 15 U.S.C. § 1125(d). Through this action, plaintiff seeks an order directing the registry of those domain names to effect the transfer the domain names to a new registrar, whereupon they may be registered by plaintiff. The matter is now before the Court on plaintiff's motion for summary judgment. For the reasons that follow, the motion must be granted.

## I.

Plaintiff, a Delaware corporation and the world's sixth largest airline, has used the trademarks CONTINENTAL AIRLINES and CONTINENTAL EXPRESS in commerce for approximately 68 years and 18 years, respectively. Both trademarks are registered on the principal trademark register and are incontestable pursuant to 15 U.S.C. § 1065. Operating under those marks, plaintiff annually generates over $8 billion in revenue and expends millions of dollars on advertising and promotional services. As a result, the

CONTINENTAL AIRLINES and CONTINENTAL EXPRESS marks are widely recognized by consumers both in the United States and abroad.

The record reflects that in mid-2003, plaintiff began to receive e-mail messages from consumers regarding the Internet website <continentalairlines.com>, a website not affiliated with or operated by plaintiff.[1]  In the messages, consumers stated, *inter alia*, that they had entered <continentalairlines.com> into their web browsers in the hope of finding plaintiff's Internet home, but had been redirected automatically — and, in some cases, unknowingly — to the website <flightreservationsonline.com>, an Internet travel reservations service selling airline tickets on a variety of airlines, including plaintiff's.  Given the similarity of the services offered by plaintiff and <flightreservationsonline.com>, consumers complained that the latter's use of <continentalairlines.com> to direct Internet users to its website "[m]ight mislead people," and described the <continentalairlines.com> website as "bogus," and "a fraud."  In some cases, consumers indicated that they had actually purchased tickets from <flightreservationsonline.com> — thereby unnecessarily paying a $15 fee to a travel agency — before realizing that they had not dealt with plaintiff.

Through Internet directory services provided by the major domain name registries, *e.g.*, NSI, Inc. and VeriSign, Inc. ("VeriSign"), plaintiff discovered that the domain name <continentalairlines.com> was registered through Netpia.com, Inc. ("Netpia"), a South Korean registrar, and that the registrant of the domain name was one "Mindal Park," who listed as his contact information an address and telephone number in South Korea and an email address of mrtangnguyen@yahoo.com.  In March 2004, plaintiff brought an arbitral

---

[1] The record reflects that plaintiff's Internet website is <continental.com>.

demand against Park under the ICANN[2] Uniform Domain-Name Dispute-Resolution Policy ("UDRP"), seeking the transfer of the <continentalairlines.com> domain name to itself. Park filed a timely response with the arbitral forum, contending that transfer was unwarranted because, *inter alia*, "continental" and "airlines" were generic terms undeserving of trademark protection. The arbitrator disagreed, finding that plaintiff was entitled to the domain name under the UDRP because (i) the domain name was identical to plaintiff's trademark; (ii) Park had no legitimate interest in the domain name; and (iii) Park had registered the domain name in bad faith. *See Cont'l Airlines, Inc. v. Park*, Claim No. FA0403000250002 (Nat'l Arb. Forum June 18, 2004) (Hong Oo Baak, Panelist) (Decision). Before Netpia could transfer the domain name to plaintiff, however, Park filed an action against plaintiff in the District Court of Incheon, South Korea, seeking to have the arbitral decision overturned. While the record does not reflect the status of that action, Netpia has since declined to transfer the domain name <continentalairlines.com> to plaintiff.

In February 2005, plaintiff filed this ACPA *in rem* action against the domain names <continentalairlines.com> and <continentalexpressairlines.com>, seeking an order directing VeriSign, the registry of all <.com> domain names, which is headquartered in this judicial district in Dulles, Virginia, to transfer the domain names to a new registrar so that plaintiff may register and acquire them. The record reflects that the domain name <continentalairlines.com> is still registered to Mindal Park, and is currently being used to forward Internet users to <eflights.com>, a website similar to

---

[2] ICANN is an acronym for the Internet Corporation for Assigned Names and Numbers, an internationally-organized, non-profit corporation responsible, *inter alia*, for Internet Protocol address space allocation.

<flightreservationsonline.com>.  The record further reflects that the <continentalexpressairlines.com> domain name is registered to an unnamed individual who, like Mindal Park, lists a physical address in South Korea as his contact information, and who, also like Mindal Park, has used the domain name to forward Internet users to <flightreservationsonline.com>.  Importantly, as of the filing of this action, the point of contact for the <continentalexpressairlines.com> domain name was listed as "nguyen, tang" at mrtangnguyen@yahoo.com, the identical email address listed for Mindal Park.  The same name and email address were also listed as the contact information for several other domain names that mimic famous airline trademarks, including <deltaexpressairlines.com>, <usairwaysexpress.com>, and <chinasouthernairline.com>, all of which have anonymous domain-name registrants.

After filing the present action, plaintiff sent a copy of the Verified Complaint to the South Korean mailing addresses listed for Mindal Park and the unnamed registrant of <continentalexpressairlines.com>.  Plaintiff also sent an electronic copy to the email address mrtangnguyen@yahoo.com.  Within two weeks, plaintiff received an email response from that address bearing the electronic signature "Mindal, Park," stating that Park would contest any effort to transfer to the <continentalairlines.com> domain name.  Notably, the email message did not mention the <continentalexpressairlines.com> domain name, even though, in an earlier message in the same email string, Park was specifically asked to confirm that he was the registrant of that domain name.  The record does not reflect that plaintiff perfected service of process by publishing notice of this action as required by the ACPA.  *See* 15 U.S.C. § 1125(d)(2)(B) (2005).  Apparently, the decision not to publish notice of this action was motivated by plaintiff's belief that the email response from "Mindal, Park" through the

-4-

mrtangnguyen@yahoo.com email address was sufficient proof that the registrant of both the <continentalairlines.com> and <continentalexpressairlines.com> domain names had received actual notice of this action, and that service by publication was therefore unnecessary. *See Banco Inverlat, S.A. v. www.Inverlat.com*, 112 F. Supp. 2d 521, 524 (E.D. Va. 2000) (waiving publication where domain name registrant received actual notice of ACPA *in rem* action).

Plaintiff also sent a copy of the Verified Complaint to VeriSign, and requested that VeriSign deposit with the Court documents sufficient to establish the Court's authority over the domain names in issue as required by the ACPA. *See* 15 U.S.C. § 1125 (d)(2)(D)(i)(I). VeriSign, however, did not comply with the request, noting that because it is merely the registry, not the registrar, of the domain names, it "cannot provide the control and authority required by the ACPA for any given domain name registration." Letter from Andrea T. Vavonese, Litig. Counsel for VeriSign, to Robert J. McAughan, Jr. (February 24, 2005).

In April 2005, plaintiff filed the present summary judgment motion, asserting that all of the jurisdictional prerequisites for an ACPA *in rem* action had been met and that the undisputed facts established plaintiff's right to both of the domain names in issue. Just as it did with the Verified Complaint, plaintiff sent copies of its summary judgment motion to the South Korean mailing addresses for Mindal Park and the unnamed registrant of <continentalexpressairlines.com>, and an electronic copy to mrtangnguyen@yahoo.com. Two days later, plaintiff received an email message from that address, again bearing the electronic signature "Mindal, Park," stating, "[m]y domain name is continentalairlines.com. [The domain name] continentalexpressairlines.com is not mine." The record reflects that since January 2005, the mrtangnguyen@yahoo.com email address and the name "nguyen,

tang" have disappeared from the contact information listed for the domain name <continentalexpressairlines.com>, and have been replaced with "person, domain" at "domainperson@yahoo.com." The other airline-related domain names using the same contact information have also adopted the domainperson@yahoo.com email address, but still list the name "nguyen, tang" as the point of contact.

In response to Park's email message, plaintiff filed a supplement to its summary judgment motion contending that Park is, in fact, the anonymous registrant of the domain name <continentalexpressairlines.com>. In support of this claim, plaintiff correctly notes that until January 2005 — shortly before this action was filed — Park's email address was the only email address appearing in the contact information for <continentalexpressairlines.com>. Plaintiff further notes that the physical address listed for <continentalexpressairlines.com> has not changed since January 2005, and thus contends that the ownership of the domain name has not changed, and that Park — after this action was filed — merely created a new email address for the domain name in order to lessen the appearance that he is cybersquatting on multiple domain names.

The merits of plaintiff's motion for summary judgment are addressed here.

## II.

A threshold question presented by plaintiff's motion is whether the motion is premature, given that the record reflects that plaintiff has neither perfected service of process by publication as required by the ACPA nor obtained a judicial waiver of the publication requirement. *See* 15 U.S.C. § 1125(d)(2)(B); *Banco Inverlat*, 112 F. Supp. 2d at 523. Plaintiff contends, in effect, that it is entitled to a judicial waiver of the publication requirement because the registrant(s) of the domain names in issue has actual notice of this

lawsuit. *See Banco Inverlat*, 112 F. Supp. 2d at 523. In support of this argument, plaintiff cites the February 2005 email message that it received from "Mindal, Park" responding to the Verified Complaint.

It is well-settled that the requirement of service by publication in ACPA *in rem* cases is at the discretion of the Court, and that waiver of the publication requirement is appropriate where the domain name registrant has actual notice of the action against his property. *See Banco Inverlat*, 112 F. Supp. 2d at 523-24. Here, the record reflects that someone (i) using the name and email address of the registrant of the domain name <continentalairlines.com> and (ii) claiming to possess the domain name <continentalairlines.com>, has responded to the Verified Complaint. This is sufficient proof of actual notice under any reasonable standard, and, accordingly, it is appropriate to waive the requirement of service by publication with respect to the domain name <continentalairlines.com>.

With respect to the domain name <continentalexpressairlines.com>, however, it is less clear that the registrant has actual notice of this action. For example, there is not — as there is for <continentalairlines.com> — an email message from someone claiming to possess the domain name acknowledging receipt of the Verified Complaint. Nor is there an acknowledging message from someone using the name of the domain name registrant. Although the acknowledging message from "Mindal, Park" was sent from the email address mrtangnguyen@yahoo.com, it is not clear from the record that that email address was the email address of record for the <continentalexpressairlines.com> domain name at the time the message was sent. The question for purposes of adequacy of service, then, is whether the individual who signs his emails "Mindal, Park," is, notwithstanding his denials, also the

registrant of the domain name <continentalexpressairlines.com>, and whether his acknowledging message may therefore be considered proof of actual notice to the registrant of that domain name.

As previously noted, the record reflects the following facts:

(i) that Mindal Park and the anonymous registrant of <continentalexpressairlines.com> are both residents of South Korea;

(ii) that Mindal Park and the anonymous registrant of <continentalexpressairlines.com> both engage in the business practice of claiming domain names that correspond to famous airline trademarks and then using the domain names to divert Internet users to the websites of travel reservations services;

(iii) that, at different times, both Mindal Park and the anonymous registrant of <continentalexpressairlines.com> have linked their respective domain names to the <flightreservationsonline.com> website; and

(iv) that, until sometime between January and April 2005, Mindal Park and the anonymous registrant of <continentalexpressairlines.com> used the same email address, *i.e.*, mrtangnguyen@yahoo.com.

While each of these facts and circumstances may not suffice individually to conclude that Park and the anonymous registrant of <continentalexpressairlines.com> are the same person, the collective force of these facts and circumstances warrants such a conclusion. Accordingly, Park's email message acknowledging receipt of the Verified Complaint suffices as proof of actual notice of this action by the registrant of <continentalexpressairlines.com>, and it is appropriate to waive the requirement of service by publication with respect to that domain name as well.

In sum, because the record reflects that the registrant of both of the domain names in issue has actual notice of this action, it is appropriate to waive the requirement of service by publication with respect to both domain names. *See Banco Inverlat*, 112 F. Supp. 2d at 523-

24. The merits of plaintiff's motion for summary judgment may therefore be considered.

### III.

For a plaintiff to prevail on summary judgment in an ACPA *in rem* suit, the evidence of record must establish that there is no genuine issue of material fact with respect to the following three elements:

> (i) that the suit was brought in a jurisdiction where the registrar, registry, or registrar certificate for the infringing domain name is located;
>
> (ii) that *in personam* jurisdiction over the person who would have been a defendant in an *in personam* action does not exist, or that such person cannot be found through due diligence; and
>
> (iii) that each of the elements of trademark infringement or dilution are established as a matter of law.

*See* 15 U.S.C. § 1125(d)(2)(A); *Cable News Network L.P., L.L.L.P. v. cnnews.com*, 177 F. Supp. 2d 506, 515 (E.D. Va. 2001), *aff'd in part*, *vacated in part on other grounds by* 56 Fed. Appx. 599, 603 (4th Cir. 2003). The first two matters present little difficulty; both are plainly established. First, there is no dispute that VeriSign, the registry of all <.com> domain names, is the registry of the domain names in issue, and is located in this judicial district.[3] Second, the record manifestly reflects that Mindal Park is a resident of South Korea with no known contacts with the United States. The third element, though equally clear, requires some explanation.

As the statute itself indicates, a plaintiff may establish the third prong of an ACPA

---

[3] Because VeriSign, the registry of the domain names, is located in this judicial district, it is irrelevant that VeriSign declined to submit a registrar certificate or other documentation with the Court to establish the Court's authority over the domain name. *See CNN*, 177 F. Supp. 2d at 514 n.17. The registrar certificate merely serves to establish the domain name's situs, an unnecessary step where, as here, the domain name registry is within the Court's jurisdiction. *See* 15 U.S.C. § 1125 (d)(2)(C)(i)-(ii).

cause of action with proof of either trademark infringement or trademark dilution. *See* 15 U.S.C. § 1125(d)(2)(A). To establish trademark infringement under the ACPA, a plaintiff must prove the following five elements:

(i) that it possesses a mark;

(ii) that the registrant used the mark;

(iii) that the registrant's use of the mark occurred in commerce;

(iv) that the registrant used the mark in connection with the sale, offering for sale, distribution, or advertising of goods or services; and

(v) that the registrant used the mark in a manner likely to confuse consumers.

*See People for the Ethical Treatment of Animals v. Doughney*, 263 F.3d 359, 364 (4th Cir. 2001) (citing 15 U.S.C. §§ 1114, 1125). Here, the first four elements require little analysis. First, plaintiff owns the registered and incontestible word marks CONTINENTAL AIRLINES and CONTINENTAL EXPRESS. Second, both marks are used, verbatim, in the domain names in issue here. Third and fourth, both marks, as part of the domain names <continentalairlines.com> and <continentalexpressairlines.com>, have been used "in commerce" and in connection with "the sale [and] offering for sale ... of ... services" because each has been used direct Internet users to websites where airline tickets are sold. *See id.*

Determining whether the fifth element of an ACPA trademark infringement claim has been met involves the use of the familiar seven-factor likelihood-of-confusion test. In the ACPA context, the seven relevant factors are:

(i) the strength of the plaintiff's mark;

(ii) the similarity between the plaintiff's mark and the allegedly infringing domain name;

    (iii)    the similarity between the plaintiff's services and the services provided under the allegedly infringing domain name;

    (iv)    the similarity between the facilities the plaintiff uses in its business and the facilities used in connection with the provision of services under the allegedly infringing domain name;

    (v)    the similarity between the plaintiff's advertising and advertising used to promote services offered under the allegedly infringing domain name;

    (vi)    the intent underlying the use of the allegedly infringing domain name; and

    (vii)    the existence of any actual confusion.

*See Petro Stopping Ctrs, L.P. v. James River Petroleum, Inc.*, 130 F.3d 88, 91 (4th Cir. 1997); *see also Washington Speakers Bureau, Inc. v. Leading Authorities, Inc.*, 33 F. Supp. 2d 488, 497 (E.D. Va. 1999). While these are the factors courts generally use, not all of the factors are of equal weight or even relevant in every case. *See Pizzeria Uno Corp. v. Temple*, 747 F.2d 1522, 1527 (4th Cir. 1984). Thus, whether a likelihood of confusion exists in a particular case always depends on the specific facts of that case. *See Anheuser-Busch, Inc. v. L & L Wings, Inc.*, 962 F.2d 316, 318 (4th Cir. 1992).

    On balance, these factors, applied here, compel the conclusion that consumer confusion is likely to result from Park's use of the domain names in issue. First, the CONTINENTAL AIRLINES and CONTINENTAL EXPRESS marks, while not inherently distinctive, are indisputably famous and thus have become distinctive of plaintiff's services in commerce. They are, therefore, strong marks. *See CNN*, 177 F. Supp. 2d at 519. Second, the marks are substantially identical to the domain names <continentalairlines.com> and <continentalexpressairlines.com>. Third, the service provided under the marks — air travel — is closely related to the service offered through the domain names, *i.e.*, air travel ticket sales. Fourth, the facilities used by plaintiff in connection with its services include the

Internet — plaintiff operates the website <continental.com> — and thus plaintiff and the domain names offer their respective services through the identical means.

With regard to the fifth factor — similarity of advertising — the record is devoid of evidence of advertising in connection with the domain names <continentalairlines.com> and <continentalexpressairlines.com>, and thus the fifth factor provides no guidance as to the likelihood of confusion. The sixth factor, however, points decisively in the direction of confusion, as the record leaves little doubt that Park's purpose in registering the domain names <continentalairlines.com> and <continentalexpressairlines.com> was to capitalize on consumer confusion. Simply put, there is no other explanation for his practice of claiming domain names identical to the trademarks of famous airlines and then using the domain names to forward Internet users to the websites of travel reservations services. With respect to the final factor — evidence of actual confusion — plaintiff has produced a number of consumer emails attesting to actual confusion caused by the <continentalairlines.com> domain name. No similar evidence of actual confusion was adduced regarding the <continentalexpressairlines.com> domain name. Thus, the final factor points strongly toward a likelihood of confusion with respect to the former domain name, but provides no guidance with respect to the latter.

In sum, a clear majority of the foregoing factors point persuasively to the conclusion that consumer confusion will likely result from Park's use of both domain names, <continentalairlines.com> and <continentalexpressairlines.com>.[4] When this element is

---

[4] While no evidence of actual confusion was adduced with respect to the domain name <continentalexpressairlines.com>, the other factors considered are more than sufficient to conclude that consumers are likely to be confused by that domain name.

considered along with the other elements of trademark infringement, it becomes manifestly clear that the domain names <continentalairlines.com> and <continentalexpressairlines.com> infringe upon plaintiff's trademark rights in CONTINENTAL AIRLINES and CONTINENTAL EXPRESS.[5]  Accordingly, because the uncontradicted facts establish the other elements necessary to prevail under the ACPA, plaintiff is entitled to judgment.

**IV.**

For the foregoing reasons,

It is hereby **ORDERED** that VeriSign, Inc., as the registry of the domain names in issue, is **DIRECTED**, pursuant to 15 U.S.C. 1125(d)(2)(D)(i), to change the registrars of record for the domain names <continentalairlines.com> and <continentalexpressairlines.com> to a registrar or registrars located in this country, so that plaintiff may thereafter register the domain names in its own name.

The Clerk is directed to send a copy of this Order to all counsel of record and to place this matter among the ended causes.

_____/s/_____

Alexandria, Virginia
July 13, 2005

T. S. Ellis, III
United States District Judge

---

[5] As previously noted, an ACPA plaintiff may prevail by proving either trademark infringement or trademark dilution.  *See* 15 U.S.C. § 1125(d)(2)(A).  While plaintiff's Verified Complaint claims both trademark infringement and dilution, the present summary judgment motion addresses only the former.  Accordingly, the question whether the domain names in issue also dilute plaintiff's trademarks is not considered here.